IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**UNITRONICS (1989) (R"G) LTD.,**
P.O. Box 300, Ben Gurion Airport
70100, Israel

**UNITRONICS, INC.**
1 Batterymarch Park, Suite 103
Quincy, MA 02169                                Civil Action File No. 1:06-cv-00027-RMC

     Plaintiffs,

v.

**SAMY GHARB,**
Bachtobelstrasse 30, 8045
Zurich, Switzerland

     Defendant.

---

**<u>UNITRONICS' MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF
NONINFRINGEMENT OF U.S. PATENT NO. 6,552,654</u>**

Glenn J. Perry
SMITH, GAMBRELL & RUSSELL, LLP
1850 M Street, N.W.
Washington, D.C. 20036
Attorney for Plaintiffs Unitronics (1989)
(R"G) Ltd. and Unitronics, Inc.

# I.  **TABLE OF CONTENTS**

I.      TABLE OF CONTENTS ..................................................................................... i
II.     TABLE OF AUTHORITIES ............................................................................. ii
III.    INTRODUCTION ............................................................................................ 1
IV.     STATEMENT OF MATERIAL FACTS ......................................................... 1
V.      SUMMARY JUDGMENT STANDARDS ...................................................... 8
VI.     INFRINGEMENT ANALYSIS ....................................................................... 8
        A.    Claim Construction............................................................................. 8
              1.    The '654 Patent Claims. ......................................................... 9
              2.    The Specification Is Limited to The Claimed Security System. ............... 11
              3.    The Prosecution History Limits The Scope of The '654 Patent Claims....11
        B.    Infringement ...................................................................................... 12
              1.    Unitronics Does Not Directly Infringe .................................. 12
              2.    Unitronics Does Not Induce Infringement ............................ 14
              3.    Unitronics does Not Contributorily Infringe ........................ 15
              4.    The Patentees Prosecution History Arguments Preclude Application of
                    The Doctrine of Equivalents .................................................. 18
VII.    UNITRONICS IS ENTITLED TO ITS REASONABLE ATTORNEYS FEES ............. 19
VIII.   CONCLUSION................................................................................................ 20

## II. <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anchorage-Hynning & Co. v. Moringiello*, 697 F.2d 356 (D.C. Cir. 1983) ................................17

*Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964) ...................................16

*Carbice Corp. of Am. v. Am. Patents Dev. Corp.*, 283 U.S. 27 (1931) .............................13, 16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..............................................................8, 14

*Cross Med. Prod. v. Medtronic Sofamor Danek*, 424 F.3d 1293 (Fed. Cir. 2005) .............8, 13, 14

*Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) (en banc) .................................9

*Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973 (Fed. Cir. 1999) ...........................................11, 12

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002) ....................18, 19

*Metro-Golden-Mayer Studios Inc. v. Grockster, Ltd.*, 125 S.Ct. 2764 (2005) .............................12

*PC Connector Solutions LLC v. SmartDisk Corp.,* 406 F.3d 1359 (Fed. Cir. 2005) .............8, 9, 12

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). ...........................................8, 9

*Phonometrics v. Westin Hotel Co.*, 350 F.3d 1242 (Fed. Cir. 2003) ............................................19

*R.F. Delaware v. Pacific Keystone Technologies*, 326 F.3d 1255 (Fed. Cir. 2003).....................12

*Sony Corporation of America. v. Universal City Studios, Inc. et al.*, 464 U.S. 417 (1984). .........17

*Warner-Jenkinson v. Hilton Davis*, 520 U.S. 17 (1997).........................................................passim

**Statutes**

28 U.S.C. § 2201 ...........................................................................................................................1

28 U.S.C. § 2202 ...........................................................................................................................1

35 U.S.C. § 103...............................................................................................................11, 18

35 U.S.C. § 112...............................................................................................................................11

35 U.S.C. § 271(a) ..................................................................................................1, 12, 20

35 U.S.C. § 271(c) .............................................................................................................passim

35 U.S.C. § 285.......................................................................................................................1, 19

Fed.R.Civ.P. 36(a) ......................................................................................................................17

Fed.R.Civ.P. 36(b) ......................................................................................................................17

Fed.R.Civ.P. 56 .....................................................................................................................1, 8

### III. INTRODUCTION

Pursuant to FED.R.CIV.P. 56, Plaintiff, Unitronics (1989) (R"G) Ltd., a corporation organized and existing under the laws of the state of Israel, and its United States subsidiary, Plaintiff, Unitronics, Inc., a corporation with its principal place of business in Massachusetts (collectively "Unitronics"), hereby file its Memorandum of Points and Authorities in Support of its Motion for Partial Summary Judgment of Non-Infringement Of U.S. Patent No. 6,552,654 against Defendant, Samy Gharb, a resident of Switzerland ("Gharb").   Unitronics seeks a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that Unitronics has not in the past infringed, and does not currently infringe, by direct infringement, by inducement of infringement, or by contributory infringement, any claim of United States Patent No. 6,552,654, (hereinafter the '654 Patent), within the meaning of 35 U.S.C. § 271.   Because Gharb's infringement claim is frivolous, making this an exceptional case, Unitronics also seeks its reasonable attorneys fees under 35 U.S.C. § 285.

### IV. STATEMENT OF MATERIAL FACTS

1.      In April of 2003, Gharb was issued the '654 Patent for his alleged invention entitled "Security System with a Mobile Telephone."  (Exhibit 1 – U.S. Patent No. 6,552,6542).

2.      Soon thereafter, and at least as early as August  of 2004, Gharb launched his protracted campaign of harassment against Unitronics and its distributors.  Complaint ¶¶ 17 through 22, and exhibits thereto [Doc. 1; Doc. 7][1].  Through his repeated faxes, emails, and telephone calls, Gharb has incessantly pestered Unitronics and its distributors with his unfounded complaints that Unitronics and its distributors were violating his '654 Patent based on its sale of Programmable Logic Controllers ("PLCs").  *Id.*

---

[1] Documents referenced as [Doc. ##] herein refer to the document numbers of the filings and docket report on the Court's CM/ECF filing system, and are incorporated herein by reference.

3.      "A Programmable Logic Controller, or PLC for short, is simply a special computer device used for industrial control systems.  They are used in many industries such as oil refineries, manufacturing lines, conveyor systems, and so on.  Where ever there is a need to control devices, the PLC provides a flexible way to "software" the components together." (Exhibit 2 - Gharb's Answers to Plaintiffs' Request for Production, answer to Request No. 2, p. 1).

4.      "A programmable logic controller is a specialized computer used to control machines and processes.  It therefore shares common terms with typical PCs [personal computers] like central processing unit, memory, software and communications.  Unlike a personal computer though, the PLC is designed to survive in a rugged industrial atmosphere and to be very flexible in how it interfaces with inputs and outputs to the real world."  (*Id.* at p. 2).

5.      Global System for Mobile Communications (GSM) is an international standard containing specifications defining the operation of a certain cellular communications network. The GSM specifications define the functions and interface requirements in detail for the network but do not address the hardware.  As used herein GSM also refers to wireless communications devices, such as a cell phone or modem, capable of communicating over a GSM network. (Exhibit 3 - Plaintiffs' Response to Defendant's Interrogatories p. 2)  *see also http://en.wikipedia.org/wiki/Global_System_for_Mobile_Communications*).

6.      "Unitronics does not manufacture or sell "PLC & GSM" devices as Gharb alleges.  Unitronics manufactures and sells PLCs.  Most of these PLCs can be remotely accessed via various communications methods, including traditional land based telephone equipment, such as a modem, local area networks (LANs), and by various wireless communications network standards, including Wi-Fi (wireless Ethernet), GSM, via a modem, including GSM modems and

2

communications devices.  Unitronics does not manufacture GSM modems, rather upon request Unitronics may resell third party GSM modems, such as those manufactured by Siemens, Motorola, Sony-Ericsson, Wavecom, Falcom, and others.  Every PLC can be connected to such modems, such as those manufactured by Rockwell Automation, Siemens, Omrom, GE-Fanuc, and others, including about 100 manufacturers worldwide."  (Exhibit 3, p. 5); *see also* [Doc. 28, Civil Statement from Defendant SAMY GHARB.  (Attachments:  # 1 ; Civil Statement continuation – part 1# 2 Civil statement continuation part 2# 3 Civil statement continuation - part 3# 4 Civil statement continuation -part 4].

7.     "The idea of connecting external modems, whether wireless such as GSM or traditional landline, is known information and is used to access most PLCs throughout the world. The communications port included in Unitronics' PLCs allows connection to external modems that have existed since Unitronics first began production of PLCs in 1989.  Unitronics PLCs could be connected to wireless modems, including GSM, as soon as such technology was available in the market.  Such a wireless connection requires programming the PLCs, a capability inherent in all PLCs.  Unitronics first began selling "GSM enabled" PLCs in 1999, meaning that Unitronics preprogrammed the PLCs to communicate with wireless devices such as a GSM device."  (Exhibit 3, p. 8, Plaintiffs' Response to Defendant's Interrogatory No. 8).  *See also* (Exhibit 10 U.S. PTO Office Action dated February 13, 2002, pp. 15-16, ¶ 24; Exhibit 11 U.S. Patent No. 5,497,149, to Fast).

8.     While the Security System described in the '654 Patent does incorporate five separate PLCs, (Exhibit 1, Column 5, Lines 25-51), the PLCs sold by Unitronics and its distributors can also be used for many different purposes besides security systems.  (Exhibit 2, Defendants response to Plaintiff's First Request for Production p. 1-4) *see also* [Doc. 7, Exhibit

K]; [Doc. 28, Civil Statement from Defendant SAMY GHARB. (Attachments: # 1 ; Civil Statement continuation – part 1# 2 Civil statement continuation part 2# 3 Civil statement continuation - part 3# 4 Civil statement continuation -part 4].

    9.      Unitronic's PLCs are connectable to wireless modems, including those utilizing GSM, such as the Sony Ericsson GT 47, as shown in the following diagram:



Figure 1      Setting up the Modem

Wherein the components are identified in the following table:

| # | Description | Notes |
|---|---|---|
| | **Component Identification, Figure 1** | |
| 1 | GPRS/GSM 6-wire cable, terminated by RJ11 connectors, p/n MJ10-22-CS90 | This cable is part of the kit. Connect it to the modem with the 15-pin **male** adapter that is supplied with the kit, MJ10-22-CS23. Note that if you do not require a GPRS connection, the standard 4-wire PLC programming cable, p/n RS232-CB1, can be used to link the modem to the PLC. This **4-wire cable** will **only** support a GSM connection. |
| 2 | 15 pin male adapter, MJ10-22-CS23 | |
| 3 | 15-pin RS232 port | Located on modem. |
| 4 | GSM antenna connector | Located on modem. |
| 5 | GSM antenna | |
| 6 | LED | |
| 7 | SIM card drawer | To see how to open the SIM card drawer, refer to Figure 2 below. Note that the drawer should be open **only** when the modem is turned **OFF**. |
| 8 | Power supply cable | |
| 9 | End of power supply cable | Red wire—positive, white wire—negative. |

(Exhibit 4 - Unitronics Doc. Production-IO Modules and Modems Technical Library pp. 44-45).

10.    Unitronics, via its counsel, have written Gharb regarding his repeated contacts with Unitronics and its distributors and requesting a claim chart or other analysis substantiating Gharb's dubious assertions of infringement.  Complaint ¶ 25, and exhibits thereto.

11.    Gharb has responded to these overtures by simply repeating the same allegations that he had already pressed in his other communications with Unitronics, and has declined to provide any kind of claim chart or analysis outlining Unitronics' alleged infringement. Complaint ¶ 25. (Exhibit 5 Defendant's Response to Plaintiffs' First Set of Interrogatories), [Doc. 31, p. 1, ¶ 1, p. 2, ¶ 7])

12.    During discovery in this action, Unitronics submitted interrogatories requesting a claim chart or other analysis substantiating Gharb's dubious assertions.  (Defendant's Response to Plaintiff's First Set of Interrogatories [Doc. 31, p. 1, ¶1, p. 2, ¶7]).  As with his earlier contentions, Gharb continues to assert that the '654 patent claims cover a PLC with GSM (cellular phone). *Id.*

13.     On June 27, 2006, Unitronics submitted its First Request for Admissions in which the first request states:  "Unitronics' PLCs are staple items of commerce with substantial noninfringing uses."  [Doc 27].

14.     On August 14, 2006, Unitronics attempted to inform Mr. Gharb of the consequences of his failure to respond under the Federal Rules of Civil Procedure.  (Exhibit 7 – August 14, 2006 e-mail from D. Heineman to S. Gharb).

15.     On August 15, 2006, Mr. Gharb responded to the Unitronics overture, yet failed to respond to the Requests for Admission.  (Exhibit 8 – e-mail from S. Gharb to D. Heineman and D. Heineman reply).

16.     On August 15, Unitronics again attempted to explain to Mr. Gharb that while he had submitted a response to Plaintiffs' Requests for Production and Interrogatories, he had not responded to the Requests for Admission.  (Exhibit 8).

17.     At the hearing on discovery held September 1, 2006, Unitronics noted the deficiency in Gharb's response to the Requests for Admission, wherein the Court ordered Mr. Gharb to respond.  Despite refilling other documents with the Court [Docs. 35-38], Mr. Gharb has failed to answer the Plaintiffs' Requests for Admission.

18.     Unitronics' PLCs are staple items of commerce with substantial noninfringing uses.  (Exhibit 2 - Defendant's Response to Plaintiffs' Request for Production of Documents, p. 1. [Doc 32. p. 1-4]).

19.     During prosecution of the U.S. Patent Application No. 09/762,111, which eventually issued as the '654 patent, the Patent Examiner rejected all claims as obvious under 35 U.S.C. § 103, in view of U.S. Patent No. 5,497,149 entitled "Global Security System" issued on

March 5, 1996 to Ray Fast.  (Exhibit 9 - Office Action Dated February 13, 2002;  Exhibit 10

U.S. Patent No. 5,497,149).  In making the obviousness rejection the Examiner stated:

> It would have been obvious to one having ordinary skill in the art to employ the
> claimed well-known controller/microprocessor in the Global Security System
> with the mobile telephone of Fast for monitoring objects, in particular vehicle
> and/or any object security protection.  *Id.* p. 16.

20.     In response to the Patent Examiner's rejection of the claims, on September 13,

2002, the Applicant submitted arguments to the Examiner to distinguish the claims over the '149

patent to Fast.  (Exhibit 11 – Applicant's Response to Office Action dated September 13, 2002).

As stated by the applicant:

> "Fast fails to disclose or suggest a security system as recited in Claim 1,
> wherein (a) the second PLC controller repeats the alarm signal if the line dialed
> by the mobile telephone in case of an alarm, is busy, and (b) each time the second
> PLC controller repeats the alarm signal, the third, fourth and fifth PLC controllers
> activate the mobile telephone and the digital recording device."  *Id.* p. 7.

21.     After reviewing the applicant's arguments, the Patent Examiner issued a Notice of

Allowability, which included the Examiner's Statement of Reasons for Allowance.  (Exhibit 12-

U.S. PTO Notice of Allowability).  The  Examiner's statement of reasons for the indication of

allowable subject matter states:

> "There is no prior art that shows the claimed a [sic] security system for
> monitoring objects such as an automobile includes a Global Positioning System, a
> digital recording device, a computer and five programmable logic controller [sic]
> for monitoring unauthorized persons attempt to enter the vehicle.  The security
> system in which an alarm is reported via a mobile telephone connection, a second
> programmable logic controller repeats the alarm signal if the line dialed by the
> mobile telephone in case of an alarm is busy and each time the second
> programmable logic controller repeats the alarm signal, the third, fourth and fifth
> programmable logic controllers activate the mobile telephone and the digital
> recording device for security protection.  (*Id.* p. 2).

22.     The applicant did not submit a response to the Examiner's statement of reasons

for the indication of allowable subject matter.

## V.  SUMMARY JUDGMENT STANDARDS

Summary judgment should only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cross Med. Prod. v. Medtronic Sofamor Danek,*, 424 F.3d 1293, 1302 (Fed. Cir. 2005).  Fed.R.Civ.P. 56.  Where, as in this case, the  evidence is such that no reasonable jury could determine otherwise, district courts are obliged to grant partial or complete summary judgment.  *Warner-Jenkinson v. Hilton Davis*, 520 U.S. 17, 41  n. 8 (1997)(*citing*  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986)).

## VI. INFRINGEMENT ANALYSIS

Determining whether a claim has been infringed requires a two-step analysis. *PC Connector Solutions LLC v. SmartDisk Corp.,* 406 F.3d 1359,1363 (Fed. Cir. 2005). "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Id.*  Summary judgment on the issue of infringement is proper when no reasonable jury could find that every element recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents. *Id.* at 1364.  While the PLCs manufactured by Unitronics may constitute a single element of the claims of the '654 patent, the complete absence of the remaining specific elements of the '654 patent claims from each of Unitronics' PLC products precludes any finding of literal infringement or infringement under the doctrine of equivalents.

### A.  Claim Construction

It is a "bedrock principle" of patent law that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).  Because the patentee is required to "define precisely what his

invention is, it is "unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms." *Id.* The claims are construed by the Court as a matter of law. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454-56 (Fed. Cir. 1998) (en banc). Gharb's contention that the '654 patent covers any PLC with GSM (Defendant's "Answer" [Doc 28 p. 1]; see also Defendant's Response to Plaintiff's Interrogatories [Doc. 31, p. 1, ¶ 1, p. 2 ¶ 7]), is patently frivolous and a misguided attempt to evade the strictures of the patent law and particularly of the claims of the '654 patent. *Phillips* 415 F.3d at 1312. In interpreting claims, a court "should look first to the intrinsic evidence of record, *i.e.,* the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *PC Connector*, 406 F.3d at 1362.

### 1. The '654 Patent Claims.

Independent claim 1 of the '654 patent is representative of the patent's claims and has the broadest scope of any of the claims of the '654 patent. All the remaining Claims 2-10 incorporate the limitations of Claim 1 and then add further limitations that narrow the scope of those other claims. Particularly, Claims 1-4 define a security system. Claims 5-6 define a method of using the security system of Claim 1, and Claims 7-10 define a method of operating the security system of Claim 1. Independent Claim 1 defines the alleged invention as follows:

> 1. A security system for monitoring objects, comprising:
> a digital recording device having at least one emergency message; and
> a mobile telephone having at least one preselected emergency number;
> a first Programmable Logic Controller (PLC) controller for initialing monitoring;
> a second PLC controller for repeating an alarm signal;
> and third, fourth, and fifth PLC controllers for activating a mobile telephone and a digital recording device;
> at least one sensor for generating an alarm state connected to the first PLC controller;

a main relay for controlling the first PLC controller and which
can be operated by a remote control;

a computer having mobile lines connectable to the five PLC
controllers for programming the five PLC controllers; and

a data set for transmission to the mobile telephone including
alarm information;

wherein the second PLC controller repeats the alarm signal if
the line dialed by the mobile telephone in case of an alarm,
is busy; and wherein each time the second PLC controller
repeats the alarm signal, the third, fourth and fifth PLC
controllers activate the mobile telephone and the digital
recording device.

(Exhibit 1 - U.S. Patent No. 6,552,654, Col 5, lines 25-51).

The '654 patent also includes various method claims. Independent Claim 5 and
dependent Claim 6 are method claims drawn to a method of using the security system of Claim
1. (*Id.* at Col. 5, line 52 – Col. 6, Line 19). As shown in Claim 5, the method of using a security
requires the step of "providing a security system as claimed in claim 1." (*Id.* at Col. 6, Lines 1-
3). Similarly, independent Claim 7 and its dependent Claims 8-10 are method claims drawn to a
method for operating the security system of Claim 1 where that method of operation requires the
step of "providing a security system as claimed in claim 1." (*Id.* at Col. 6, Lines 20-65). Thus,
to practice any of the methods of Claims 5-10, requires satisfaction of the initial step of
"providing a security system as claimed in Claim 1." Accordingly, all of the claims dependent
upon the construction of Claim 1 and are more limited in scope than Claim 1.

For the purposes of this motion, a detailed construction of Claim 1 is not necessary.
Rather, the Court need only look to the express limitations and elements of Claim 1 to determine
the scope of protection under the '654 patent. Gharb's contention that the invention the
invention defined by Claim 1 of the '654 patent is simply "a PLC with GSM" impermissibly
seeks to eliminate multiple express elements and limitations from the claims. As is plainly
evident, the claims require more for infringement than simply a PLC and a cell phone.

### 2.    The Specification Is Limited to The Claimed Security System.

The specification further limits the scope of the claims to the security system as specifically recited.  According to 35 U.S.C. § 112, paragraph 1:

> "The specification shall contain a written description of the invention, and the manner and process of making and suing it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.:

The specification for the '654 patent only discloses a security system having five PLCs with the PLCs connected to the other elements in the security system in the particular manner claimed and having the specific functions recited in the claims.  (Exhibit 1).

### 3.    The Prosecution History Limits The Scope of The '654 Patent Claims

The prosecution history gives insight into what the applicant originally claimed as  the invention, and often what the applicant gave up in order to meet the Examiner's objections." *Elkay Mfg. Co. v. Ebco Mfg. Co*., 192 F.3d 973, 978 (Fed. Cir. 1999).  In this case, the Patent Examiner rejected the claims of the '654 patent as obviousness under 35 U.S.C. § 103 (Exhibit 9, pp. 15-16, ¶ 24), in view of the global security system disclosed in U.S. Patent No 5,497,149 issued to Fast (Exhibit 10).  To overcome this rejection the patentee expressly disclaimed subject matter from the scope of the claims in order to obtain allowance of the patent grant.  *Elkay*, 192 F.3d at 978.  In response to the Examiner's rejection, the patentee argued:

> Fast fails to disclose or suggest a security system as recited in Claim 1, wherein (a) the second PLC controller repeats the alarm signal if the line dialed by the mobile telephone in case of an alarm, is busy, and b) each time the second PLC controller repeats the alarm signal, the third, fourth and fifth PLC controllers activate the mobile telephone and the digital recording device.  (Exhibit 11 - p. 7, ¶ 2).

Thus, the patentee expressly limited the claims of the '654 patent to a security system having these limitations.  This is particularly true where, as here, the Examiner's Statement of Reasons

for Allowance (Exhibit 12 – U.S. PTO Notice of Allowability p. 2, ¶ 2), repeated the patentee's arguments. *Elkay* 192 F.3d at 979.

As set forth in the foregoing, the Court's construction of Claim 1 requires that each element or limitation of the claim be present. A claim chart for Claim 1 of the '654 patent is provided at Exhibit 13, for the Court's reference.

## B. Infringement

Infringement under 35 U.S.C. § 271 may be direct, induced, or contributory. 35 U.S.C. § 271. Under any of these theories, the patentee must establish an infringement of the patent claims. To establish infringement, every element of the claim must be present in the accused device, literally or by an equivalent. *See Warner-Jenkinson.,* 520 U.S. at 40 (discussing the "all-elements" rule). In the case of direct infringement under § 271(a), the patentee must show infringement by the accused infringer. Particularly, to succeed on direct infringement, Gharb must show that Unitronics makes, uses, sells, offers to sell, or imports security systems that have all of the elements of Claim 1 of the '654 patent. Under indirect theories of liability, Gharb is precluded from showing contributory or induced infringement under § 271 (b) or § 271(c) without evidence of direct infringement by Unitronics or Unitronics' customers. *Metro-Golden-Mayer Studios Inc. v. Grockster, Ltd.*, 125 S.Ct. 2764, 2782 (2005); *R.F. Delaware v. Pacific Keystone Technologies,* 326 F.3d 1255, 1268 (Fed. Cir. 2003). Summary judgment on the issue of infringement is proper when no reasonable jury could find that every element recited in a properly construed claim is not found in the accused device either literally or under the doctrine of equivalents. *Warner-Jenkinson*, 520 U.S. at 40; *PC Connector*, 406 F.3d at 1364.

### 1. Unitronics Does Not Directly Infringe

With respect to direct infringement, the Patent Statute states that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefore, infringes the patent." 35 U.S.C. § 271(a). To infringe an apparatus claim, such as the security system of claims 1-4 of the '654 patent, the accused device must have all of the elements set forth in the claims. *Warner-Jenkinson.,*520 U.S. at 40; *Cross Med. Prod.*, 424 F.3d 1311-12.

Unitronics' produces PLCs, many of which are capable of communicating with cellular communications devices, phones and modems utilizing GSM standards. (Exhibit 14 - Unitronics Product Comparison Tables: Vision Series, Jazz Series, and M90-91 Series) *see also* [Doc 28, part 2, pp. 1, 7, 14. However, Unitronics' does not produce security systems having the elements set forth in Claim 1 of the '654 patent. Gharb has not alleged otherwise and is incapable of showing that Unitronics has ever done so. Indeed, Gharb's infringement contentions appear to be motivated by his incorrect belief that simply having a PLC that is able to communicate over a GSM network would infringe his patent. (Exhibit 3, p. 1, ¶ 1, and p. 2, ¶ 7]). Gharb's contention that "Unitronics can not use or make any element of my USA Patent" [Doc. 31, p. 2, ¶7], can not form the basis for establishing infringement of his patent. *Carbice Corp. of Am. v. Am. Patents Dev. Corp.*, 283 U.S. 27, 31-32 (1931) (courts deny relief against those who disregard the limitations sought to be imposed by the patentee beyond the legitimate scope of its monopoly).

Unitronics does not manufacture, use, sell, offer to sell, or import into the United States a security system as defined by Claim 1 of the '654 Patent, and therefore does not directly infringe the '654 Patent. *Warner-Jenkinson.,*520 U.S. at 40; *Cross Med. Prod.*, 424 F.3d 1311-12. Moreover, because Unitronics does not "provide" a security system as defined by Claim 1, it

cannot infringe the method claims of Claims 5-10. *Id.* No reasonable juror could conclude otherwise, and therefore the Court should grant Unitronics' motion for summary judgment. *Warner-Jenkinson*, 520 U.S. at 41 n. 8 (citing Fed.R.Civ.P. 56; *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322-323 (1986).

At most, Gharb's infringement contentions could only suggest that Unitronics' PLCs are capable of being configured with a GSM device and other components to make a security system having each and every element set forth in Claim 1 of the '654 patent. However, a device does not infringe simply because it is possible to alter it in a way that would satisfy all the elements of a patent claim. *High Tech Med.*, 49 F.3d at 1555. The patentee must establish that an accused product meets each and every claim element. *Warner-Jenkinson,* 520 U.S. at 40. Because Gharb is unable to point to any product made, used, offered for sale, sold, or imported by Unitronics, that includes each and every element of Claim 1 of the '654 patent, Unitronics is entitled to a declaratory judgment that it has not in the past directly infringed, and does not currently directly infringe, any claim of the '654 Patent within the meaning of 35 U.S.C. § 271(a).

### 2. Unitronics Does Not Induce Infringement

Whoever actively induces infringement of a patent shall be liable as an infringer. 35 U.S.C. § 271(b). To prevail on inducement of infringement under 35 U.S.C. § 271(b), the patentee is required to show that there has been a direct infringement by the accused infringer's customers, that the accused infringer knowingly induced infringement, and possessed specific intent to encourage another's infringement." *Cross Med. Prod. v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1312 (Fed. Cir. 2005).

In this case Gharb has not alleged nor can he cite any instance where any of Unitronics' customers or any other entity for that matter have directly infringed the '654 patent. Indeed,

none of the discovery responses produced by Gharb show any instance where any entity, much less any of Unitronics' customers, has practiced or presently practices the claimed security system invention. (Exhibit 15 ) (Exhibit 2, Defendants response to Plaintiff's First Request for Production p. 1-4) *see also* [Doc. <u>28</u>, Civil Statement from Defendant SAMY GHARB. (Attachments: # <u>1</u> ; Civil Statement continuation – part 1# <u>2</u> Civil statement continuation part 2# <u>3</u> Civil statement continuation - part 3# <u>4</u> Civil statement continuation -part 4]; [Doc.32]. Thus, Gharb has not shown, and is unable to prove the predicate act of any direct infringement by anyone, much less any of Unitronics' customers. [Docs. 28 & 32].

As to the secondary aspects of inducement, Gharb can present no evidence that Unitronics has knowingly induced infringement of the security system defined by Claim 1 of the '654 patent. Indeed, none of the uses of Unitronics' PLCs presented by Gharb show use of Unitronics' PLCs in any security system. (Exhibit 15), *see also* [Doc. 28], [Doc. 31], and [Doc. 32]. No reasonable juror could conclude that Unitronics has induced others to infringe the '654 patent, much less that Unitronics had the specific intent to do so. Accordingly, Unitronics is entitled to a declaratory judgment that it has not and currently does not induce infringement of any claim of the '654 Patent within the meaning of 35 U.S.C. § 271(b).

### 3.  Unitronics does Not Contributorily Infringe

Unitronics is entitled to a declaratory judgment that it has not, and does not contributorily infringe any claim of the '654 Patent. With respect to contributory infringement, the Patent Statute states:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, *and not a*

> *staple article or commodity of commerce suitable for substantial noninfringing use*, shall be liable as a contributory infringer.

35 U.S.C. § 271(c) (emphasis added). Thus in addition to proving an act of direct customer infringement, Gharb must show Unitronics knew that its PLCs were especially made for use in an infringing security system defined by Claim 1 of the '654 patent <u>and</u> that Unitronics' PLC are not staple items of commerce having no substantial non-infringing uses. *Cross Med. Prod.*, 424 F.3d at 1312; *See also Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964).

While Unitronics does sell PLCs that can be used as one component the security system defined by Claim 1 of the '654 patent, Unitronics' PLCs are general purpose devices for industrial automation that can be used for many alternative purposes besides security systems. (Exhibit 2, p. 1). Gharb's lengthy downloads from the Internet serve to show that wide range of uses for Unitronics' PLCs. Therefore, Unitronics' sales of its PLCs cannot constitute contributory infringement of the security system defined by Claim 1 of the '654 patent under the explicit "staple article of commerce" exception to 35 U.S.C. § 271(c). As the Supreme Court has noted, in rejecting a contributory infringement claim that was based on the sale of components of a patented system:

> The limited monopoly to make, use, and vend an article may not be expanded by limitations as to materials and supplies necessary to the operation of it. . . . If a monopoly could be so expanded, the owner of a patent for a product might conceivably monopolize the commerce in a large part of unpatented materials used in its manufacture. . . . [The] courts deny relief against those who disregard the limitations sought to be imposed by the patentee beyond the legitimate scope of its monopoly.

*Carbice*, 283 U.S. at 31-32 . Thus, under this reasoning, Gharb is not allowed to monopolize the entire PLC market by attempting to enforce a patent that is limited to a specific security system that merely uses five PLCs. As stated more recently by the Supreme Court, "[A] sale of an

article which though adapted to an infringing use is also adapted to other and lawful uses, is not enough to make the seller a contributory infringer." *Sony Corporation of America et al. v. Universal City Studios, Inc. et al.*, 464 U.S. 417, 442 (1984).

The first item in Unitronics' Request for Admissions is that Gharb admit that "Unitronics' PLCs are staple items of commerce with substantial noninfringing uses." (Exhibit 6 – Plaintiffs'' First Request for Admissions). During the discovery period, Unitronics sought Gharb's cooperation in responding to its requests. (Exhibits 7-8). During the discovery hearing on August 18, 2006, the Court ordered Gharb to respond to Unitronics' Request for Admissions. Despite Gharb's representations to the Court that he would answer the same, he has yet to respond to the requests, despite his refilling of wholly redundant information with the Court. *See* [Docs. 35-38]. Accordingly, Unitronics hereby requests that the Court deem the matter admitted under Fed.R.Civ.P. 36(a) and that the matter be conclusively established under Fed.R.Civ.P. 36(b). *Anchorage-Hynning & Co. v. Moringiello*, 697 F.2d 356, 359-60 (D.C. Cir. 1983)(Under Fed. R. Civ. P. 36, facts are conclusively established where there is a failure to respond to requests for admission).

Notwithstanding the admission by Gharb, which conclusively establishes that Plaintiff's PLCs are staple items of commerce, no reasonable jury could conclude that Plaintiff's PLCs are not staple items of commerce. In the first instance Mr. Gharb affirmatively states this fact. (Exhibit 2, p. 1). The Court need only consider Mr. Gharb's response to Unitronics' Requests for Production, and his discussion regarding the history and development of PLCs. [Doc. 32, pp. 1-4]. As affirmatively stated by Mr. Gharb: "A programmable Logic Controller, or PLC for short, is simply a special computer device used for industrial control systems. They are used in many industries such as oil refineries, manufacturing lines, conveyor systems and so on. Where

ever there is a need to control devices the PLC provides a flexible way to "software the components together." *Id.*. Additionally Unitronics also refer the Court to Gharb's resubmission of Unitronics' Exhibit K to its Complaint. As shown in the letter from Controls & Power, Inc., the Unitronics' PLCs are used to control six water wells and two storage tanks in South Carolina. (Exhibit 15). As may be readily seen, PLCs are staple items of commerce with substantial noninfringing uses and no jury could conclude otherwise. Accordingly, Unitronics is entitled to a declaratory judgment that it has not in the past contributorily infringed, and does not currently contributorily infringe, any claim of the '654 Patent within the meaning of 35 U.S.C. § 271(c).

### 4. The Patentees Prosecution History Arguments Preclude Application of The Doctrine of Equivalents

The doctrine of prosecution history estoppel serves to limit the doctrine of equivalents when the applicant makes a narrowing amendment for purposes of patentability, or clearly and unmistakably surrenders subject matter by arguments made to the examiner. See *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736 (2002). In this case, Gharb's arguments to distinguish the claimed security system over the Patent Examiner's obviousness rejections under 35 U.S.C. § 103, forecloses any range of equivalents, limiting the claims to the specific embodiments of a security system in the claims. (Exhibit 9, Exhibit 10). In response to the Examiner's rejection, Gharb, through his attorneys, argued:

> Fast fails to disclose or suggest a security system as recited in Claim 1, wherein (a) the second PLC controller repeats the alarm signal if the line dialed by the mobile telephone in case of an alarm, is busy, and b) each time the second PLC controller repeats the alarm signal, the third, fourth and fifth PLC controllers activate the mobile telephone and the digital recording device. (Exhibit 11 – Applicant's Amendment, p. 7, ¶ 2).

Thus, Gharb's arguments, offered to distinguish over U.S. Patent No. 5,497,149 to Fast in order to secure allowance of the '654 patent, preclude any application of the doctrine of

18

equivalents. *Festo*, 535 U.S. at 736. Even if the doctrine of equivalents could apply, infringement cannot be established under the all elements rule. *Warner-Jenkinson.,* 520 U.S. at 40. Gharb is unable to establish that Unitronics' PLCs meet all elements and limitations of the '654 patent claims, either literally or by equivalence and that no reasonable jury could conclude otherwise. *Id.* at 41 n. 8.

## VII.    UNITRONICS IS ENTITLED TO ITS REASONABLE ATTORNEYS FEES

The Patent Act permits a trial court to award attorney fees to the prevailing party "in exceptional circumstances." 35 U.S.C. § 285. The determination of whether a case is exceptional and, thus, eligible for an award of attorney fees under §285 is a two-step process. First, the district court must determine whether a case is exceptional. *Phonometrics v. Westin Hotel Co.*, 350 F.3d 1242, 1245 (Fed. Cir. 2003). After determining that a case is exceptional, the district court must determine whether attorney fees are appropriate. *Id..* The prevailing party may prove the existence of an exceptional case by showing: inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement." *Id.* at 1246. When "the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence." *Id.*

Through his repeated faxes, e-mails, and telephone calls, Gharb has incessantly pestered Unitronics and its distributors with his unfounded complaints that Unitronics and its distributors were violating his '654 Patent based on its sale of PLCs. (Complaint ¶¶ 17-22 and Exhibits thereto [Docs. 1 and 7]). In this case, Gharb's contention that Unitronics' PLCs infringe simply because they are capable of communicating with a GSM device is frivolous and a manifestly unreasonable assessment of infringement. The claims of the '654 patent narrowly define a

security system having specific elements and specific arrangements of those elements according to the claim limitations. (Exhibit 1, Column 5, Lines 25-51). Accordingly, Unitronics, as the prevailing parties in this declaratory judgment action are entitled to its reasonable attorneys fees.

## VIII.   CONCLUSION

Because Gharb is unable to establish that Unitronics' PLCs meet all elements and limitations of the '654 patent claims, either literally or by equivalence, Unitronics is entitled to summary judgment of no direct infringement under 35 U.S.C. § 271(a). Similarly, because Gharb is unable to establish that there has been a direct infringement by Unitronics' customers or any other entity, that Unitronics knowingly induced infringement by its customers, or that Unitronics possessed specific intent to encourage its customers' infringement, Unitronics is entitled to summary judgment of no inducement of infringement under 35 U.S.C. § 271(b). Finally, because Gharb is unable to establish that any of Unitronics' customers or that any other entity directly infringed the '654 patent, that Unitronics knew that the combination for which its PLCs were especially made was both patented and infringing and that Unitronics' PLCs have no substantial non-infringing uses, Unitronics is entitled to summary judgment of no contributory infringement of the '654 patent under 35 U.S.C. § 271(c). Accordingly, the Court should grant Unitronics' motion for summary judgment of noninfringement and award Unitronics its reasonable attorneys fees.

__/s/ Glenn J. Perry_____
Glenn J. Perry
SMITH, GAMBRELL & RUSSELL, LLP
1850 M Street, N.W.
Washington, D.C. 20036
Attorney for Plaintiffs Unitronics (1989)
(R"G) Ltd. and Unitronics, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITRONICS (1989) (R"G) LTD.,

and

UNITRONICS, INC.

    Plaintiffs,

v.

SAMY GHARB,

    Defendant.

Civil Action File No.: 1:06-cv-0027-RMC

## CERTIFICATE OF SERVICE

    I, Glenn J. Perry, counsel for Plaintiffs, do hereby certify that I electronically filed with the Clerk of Court PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. 6,552,654; using the CM/ECF system and have served all parties by placing a copy of same in the U.S. mail, postage prepaid, addressed to the following:

    Samy Gharb
    Bachtobelstrasse 30,
    8045 Zurich, Switzerland

    Samy Gharb
    P.O. Box 5066
    8045 Zurich, Switzerland

This 19TH day of September, 2006.

          /s/ Glenn J. Perry_____
          Glenn J. Perry
          D.C. Bar No. 278630
          SMITH, GAMBRELL & RUSSELL, LLP
          1850 M Street, N.W., Suite 800
          Washington, DC 20036
          Telephone: 202-973-2611
          Fax: 202-263-4311

Attorney for Unitronics (1989) (R"G) Ltd. and
Unitronics, Inc.