## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITRONICS (1989) (R"G) LTD., *et al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 06-27 (RMC) |
| SAMY GHARB, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Unitronics (1989) (R"G) Ltd., a company based in Israel, and its U.S. subsidiary, Unitronics, Inc. (collectively, "Unitronics"), sue Samy Gharb, a resident of Switzerland, to resolve a patent dispute. Mr. Gharb insists that Unitronics is infringing on a U.S. patent that he holds. Unitronics seeks a declaration that it has not and does not infringe any claim of Mr. Gharb's patent. Unitronics has filed a motion for partial summary judgment, to which Mr. Gharb, who is defending this case *pro se* in a foreign court and in a foreign language, has responded at length.[1] Having carefully reviewed both parties' submissions, the Court concludes that Unitronics has not and does not infringe on Mr. Gharb's patent. Partial summary judgment will be awarded to Unitronics.

---

[1] The Court construes Mr. Garb's February 22, 2006 letter to the Court as a counterclaim for infringement. *See* [Dkt. # 15]. Unitronics filed its answer/opposition to the counterclaim so that the issue of infringement is ripe for adjudication. *See* [Dkt. #20]. Mr. Gharb's counterclaim of infringement will be dismissed.

# I. BACKGROUND FACTS

## A. The Parties

Unitronics Ltd. is a corporation organized and existing under the laws of the State of Israel, with its principal place of business at Ben Gurion Airport. *See* Pls.' Mem. of P. & A. in Supp. of its Mot. for Partial Summ. J. of Non-Infringement of U.S. Patent No. 6,552,654 ("Pls.' Mem.") at 1. Unitronics, Inc., its subsidiary, is a corporation organized under the laws of the state of Delaware whose principal place of business is in Massachusetts. *Id.* Mr. Gharb is a resident of Zurich, Switzerland. *Id.* It appears, from the telephone conferences conducted in this case, that his native language is German.

## B. The Technology at Issue

Before discussing Mr. Gharb's invention and the Unitronics products at issue, the Court provides a short definition section to aid the reader:

- *Programmable Logic Controller ("PLC")* "is simply a special computer device used for industrial control systems. [PLCs] are used in many industries such as oil refineries, manufacturing lines, conveyor systems, and so on. Where ever [sic] there is a need to control devices, the PLC provides a flexible way to 'software' the components together." Pls.' Mem., Pls.' Statement of Material Facts ("Pls.' Facts") ¶ 3 (quoting Mr. Gharb's Answer to Pls.' Request for Production No. 2) [Dkt. #32].

- *Global System for Mobile Communications ("GSM")* "is an international standard containing specifications defining the operation of a certain cellular communications network. The GSM specifications define the functions and interface requirements in detail for the network but do not address the hardware. As used herein, GSM also refers to wireless communications devices, such as a cell phone or modem, capable of communicating over a GSM network." Pls.' Facts ¶ 5 (quoting Pls.' Response to Def.'s Interrogatories at 2).

- "SMS" stands for Short-Message-Service, or text messages by cellular phone.

### 1. Mr. Gharb's Invention

Mr. Gharb invented a vehicle alarm system using five PLCs[2] and GSM and received U.S. Patent No. 6,552,654 ("the '654 Patent") for it.  Compl. ¶¶ 9-11. Specifically, Mr. Gharb invented a security system that allows for a breach to be reported via a mobile telephone connection.  *See* Pls.' Mem., Ex. 1 ('654 Patent).  A more extended description was provided in the patent materials:

### BACKGROUND OF THE INVENTION

1.  Field of the Invention

The invention relates to a security system with a mobile telephone for monitoring objects, in particular vehicles and security cases, and a method for operating such a system.

---

[2]  In his response to Unitronics' discovery requests, Mr. Gharb provided a "Simple Example" of the value of PLCs:

Consider something as simple as a switch that turns on a light.  In this system with a flick of the switch the light would turn on or off.  Beyond that though there is no more control.  If your boss came along and said I want that light to turn on thirty seconds after the switch has been flipped, then you would need to buy a timer and do some rewiring.  So it is time, labour [sic] and money for any little change.

A PLC Saves the Day
Now consider the same device with a PLC in the middle.  The switch is fed as an input into the PLC and the light is controlled by a PLC output.  Implementing a delay in this system is easy since all that needs to be changed is the program in the PLC to use a delay timer.

This is a rather simple example but in a larger system with many switches and lights (and a host of other devices) all interacting with each other this kind of flexibility is not only nice but imper[a]tive.  Hopefully a light bulb has now turned on over your head.

Pls.' Mem., Ex. 2, Def.'s Responses to Pls.' Request for Production No. 2 [Dkt. #32].

2.  Brief Description of the Related Art

The monitoring or protecting of objects, in particular vehicles and security cases, is becoming more and more important today.
Various security systems are known for protecting vehicles, for example, alarm systems with automatic alarm triggering, at the onset of which a loud horn signal is heard if unauthorized persons attempt to enter the vehicle. But if an unauthorized person is successful in deactivating the alarm system, the vehicle may be stolen, and its recovery frequently becomes an insurmountable problem.

SUMMARY OF THE INVENTION

It is the objective of the invention at hand to propose a security system in which the alarm is reported via a mobile telephone connection.

A further objective is to describe a method for operating a system in which a satellite locating system is included for locating the vehicle.

. . .

*Id.* Col. 1, lns. 5-26.

## 2.  Unitronics' Business

Unitronics designs, develops, manufactures, and sells general purpose PLCs. Unitronics manufactures these PLCs at various sites in Israel and sells them around the world, including the United States.  *See* Pls.' Responses to Def.'s Interrogatories Nos. 6 & 7 [Dkt. #33]. Specifically, Unitronics sells its PLCs through an international distribution network of more than 100 distributors and through its U.S. subsidiary, Unitronics, Inc.  The PLCs sold by Unitronics in the United States include the following series of products (each consisting of numerous models): the M90/M91 Series, the Vision Series, and optional accessories such as expansion units or cellular modems manufactured and sold by third parties (to Unitronics and then by Unitronics to the ultimate purchaser of PLCs).  *See* Pls.' Responses to Def.'s Interrogatories No. 2; Def.'s Civil Statement

[Dkt. #28]. Unitronics PLCs can be connected to modems using a variety of cellular communication platforms, including GSM, Wi-Fi (wireless Ethernet), CDMA, TDMA, and iDEN (which are all cellular technologies used by mobile phones),[3] to send and receive short-message-service ("SMS" or text messages) so that an owner can monitor from a distance the performance of, for instance, vending machines, refrigeration trucks, water wells or manufacturing production lines. *See* Pls.' Mem. at 2, Def.'s Civil Statement [Dkt. #28].

Unitronics Ltd. was established in 1989 and has been producing and selling PLCs since that time. Pls.' Mem,. Ex. 3, Pls.' Responses to Def.'s Interrogatories No. 13.

> In 1989 there was no GSM but other modems existed and were used to remotely access automation systems and PLCs via telephone lines. As soon as modems for mobile or wireless telephony were available (not only GSM but also such protocols and architecture as CDMA, TDMA and iDEN – which are all cellular modems in different technologies), Unitronics PLCs supported these protocols by including preprogrammed instructions to communicate with these protocols.

*Id.* No. 14.

> Unitronics does not use GSM anywhere. Unitronics provides generic PLCs that can be used to control and monitor machines, production lines, devices etc. In order to remotely access such machine or device, an external modem (manufactured by third parties) can be connected by the end user. This can be a landline (wired) modem, a cable modem, or a wireless modem (including but not limited to GSM, CDMA, TDMA, iDEN, NAMPS, Wi-Fi or any Radio-Frequency modem). Unitronics does not have any PLC with integrated or embedded GSM. All Unitronics products are "without GSM," but can be connected to an external GSM modem.

*Id.* No. 19. Thus, Unitronics PLCs are connectable to wireless modems, including those utilizing

---

[3] *See* Wikipedia, http://en.wikipedia.org/wiki/Cellular_network (last visited Sept. 24,2007).

GSM and those utilizing different cellular communications platforms.

### 3. This Dispute

When Unitronics introduced a PLC that could communicate over GSM, Mr. Gharb cried foul and began a deluge of calls and faxes to Unitronics and its distributors, threatening patent litigation. *See* Pls.' Mem. at 1; *see also* Compl. ¶¶ 17-22 and exhibits attached thereto. He essentially contends that the '654 Patent covers any PLC with GSM. To be more precise, Mr. Gharb's position is that "[n]o Company can Use sale [sic] Micro PLC & GSM." *See* Def.'s Response to Pls.' Request for Production No. 12 [Dkt. #32].

## II.  LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than the "[t]he mere existence of a scintilla of evidence" in support of its position. *Id*. To prevail on a motion for

summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id*.

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### B. Patent Infringement

"Determination of patent infringement requires a two-step analysis: (1) the scope of the claims must be construed; and (2) the allegedly infringing device must be compared to the construed claims." *Mars, Inc. v. H.J. Heinz Co.*, 377 F.3d 1369, 1373 (Fed. Cir. 2004). Claim construction is a question of law, *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996), and begins "with the words of the claim itself," *Mars, Inc.*, 377 F.3d at 1373. A patentee may act as his or her own lexicographer. *See In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994). But "[i]n the absence of an express intent to impart a novel meaning to the claim terms, the words of the claim are presumed to take on the ordinary and customary meanings attributed to them by those of ordinary skill in the art." *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1298 (Fed. Cir. 2003) (citation omitted). The determination of the ordinary and customary meaning

of a term may be evidenced by a multitude of sources, including: the claims themselves, *id.* (citing *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1357 (Fed. Cir. 1999)); dictionaries and treatises, *id.* (citing *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202 (Fed. Cir. 2002)); and the written description, the drawings, and the prosecution history, *id.* (citing *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1324 (Fed. Cir. 2001)).

To determine the proper meaning of patent claims, "the court should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp.*, 90 F.3d at 1582 (citation omitted); *see also Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1343-44 (Fed. Cir. 1998); *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004) (stating that "[a] long line of cases indicates that the intrinsic record is the primary source for determining claim meaning"). "When an analysis of *intrinsic* evidence resolves any ambiguity in a disputed claim term, it is improper to rely on extrinsic evidence to contradict the meaning so ascertained." *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1367 (Fed. Cir. 2003) (emphasis in original). If there is doubt regarding the meaning of the claim terms, however, "consideration of extrinsic evidence may be necessary to determine the proper construction." *Vitronics*, 90 F.3d at 1583. If after examination of extrinsic evidence the claim remains ambiguous and susceptible to different meanings, the court will generally accept the narrower definition. *Id.* at 1582.

"The second step of the infringement analysis is comparing the properly construed claims with the allegedly infringing devices." *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1377 (Fed. Cir. 2003). "Infringement, whether literal or under the doctrine of equivalents is a question of fact." *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1318 (Fed. Cir. 2004)

(citation omitted); *see also Nystrom v.Trex*, 374 F.3d 1105, 1110 (Fed. Cir. 2004). The patentee

prevails on a claim of patent infringement if he establishes that "the accused device meets each claim

limitation, either literally or under the doctrine of equivalents." *Deering Precision Instruments,*

*L.L.C. v. Vector*, 347 F.3d 1314, 1324 (Fed. Cir. 2003). Literal infringement of a claim in a patent

exists "when each of the claim limitations reads on, or in other words is found in, the accused

device." *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1345 (Fed. Cir. 2002) (internal

quotation marks and citation omitted); *see also TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360,

1372 (Fed. Cir. 2002) ("To establish literal infringement, all elements of the claim, as correctly

construed, must be present in the accused system.") (citation omitted). A device that does not

literally infringe may, however, still infringe under the doctrine of equivalents if it (1) performs

substantially the same function, (2) in substantially the same way, and (3) achieves substantially the

same result as the allegedly infringed claim. *Graver Tank & Mfg. Co., Inc. v. Linde Air Prod. Co.*,

339 U.S. 605, 608 (1950); *Penwalt Corp. v. Durand-Wayland*, 833 F.2d 931, 934-35 (Fed. Cir.

1987).

   Under the "all elements" rule, a patent claim is not infringed unless every element

mentioned in the claim, or its equivalent, is combined in substantially the same way to produce a

result of substantially the same nature. *See Getty v. Kinzbach Tool Co.*, 119 F.2d 249, 250 (5th Cir.

1941); *Etten v. Kauffman*, 121 F.2d 137, 139-40 (3rd Cir. 1941). Thus, "[u]nder the 'all elements'

rule, there can be no infringement under the doctrine of equivalents if even one limitation of a claim

or its equivalent is not present in the accused device or method." *RF Delaware, Inc. v. Pac. Keystone*

*Technologies, Inc.*, 326 F.3d 1255, 1265 (Fed. Cir. 2003) (citation omitted).

   Finally, the burden of proof lies with the party alleging patent infringement to

"present sufficient evidence to establish that one or more patent claims are infringed." *Jazz Photo Corp., v. Int'l Trade Comm'n*, 264 F.3d 1094, 1102 (Fed. Cir. 2001).

## III. ANALYSIS

It is a "bedrock principle" of patent law that "the elements of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc); *see also Vitronics*, 90 F.3d at 1582 ("we look to the words of the claims themselves . . . to define the scope of the patented invention"). Because the patentee is required to "define precisely what his invention is," it is "unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms." *Phillips*, 415 F.3d at 1312 (citing *White v. Dunbar*, 119 U.S. 47, 52 (1886)); *see also Cont'l Paper Bag Co. v. E. Paper Bag Co.*, 210 U.S. 405, 419 (1908) ("the claims measure the invention"). In interpreting claims, a court "should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1362 (Fed. Cir. 2005). With this direction, the Court now turns to the '654 Patent and the claims therein.

### A. Claim Construction of the '654 Patent

The U.S. Patent Office issued the '654 Patent to Mr. Gharb on April 22, 2003, for an invention called "Security System with a Mobile Telephone." *See* Pls.' Mem., Ex. 1 (the '654 Patent). The '654 Patent contains 10 separate claims. Claims 1-4 define a security system; Claims 5-6 define a method of using the security system; and Claims 7-10 define a method of operating the security system. Claim 1 is representative of the all of the claims and has the broadest scope:

> 1. A security system for monitoring objects, comprising:
> a digital recording device having at least one emergency message; and
> a mobile telephone having at least one preselected emergency number;
> a first Programmable Logic Controller (PLC) controller for initialing monitoring;
> a second PLC controller for repeating an alarm signal; and
> third, fourth, and fifth PLC controllers for activating a mobile telephone and a digital recording device;
> at least one sensor for generating an alarm state connected to the first PLC controller;
> a main relay for controlling the first PLC controller and which can be operated by a remote control;
> a computer having mobile lines connectable to the five PLC controllers for programming the five PLC controllers; and
> a data set for transmission to the mobile telephone including alarm information;
> wherein the second PLC controller repeats the alarm signal if the line dialed by the mobile telephone in case of alarm, is busy; and
> wherein each time the second PLC controller repeats the alarm signal, the third, fourth and fifth PLC controllers activate the mobile telephone and the digital recording device.

Pls.' Mem., Ex. 1, '654 Patent Col. 5, lns. 25-51.

Dependent Claim 2 describes "[a] security system as claimed in claim 1, wherein the data set comprises a start signal, the at least [sic] one emergency number, and the at least [sic] one emergency message." *Id.* Col. 5, lns. 52-54. Dependent Claim 3 describes "[a] security system as claimed in claim 1 wherein" the PLCs include inputs and outputs, including connections to a mobile

telephone and a recording device. *Id*. Col. 5, lns. 55-64. Dependent Claim 4 describes "[a] security system as claimed in claim 1, wherein the fifth PLC controller is configured and arranged to control the ignition and the solenoid of the fuel pump of a vehicle." *Id.* Col 5., lns. 65-67. Independent Claim 5 describes "[a] method of using a security system . . . as claimed in claim 1." *See id*. Col. 6, lns. 1-13. Dependent Claim 6 describes the "method of claim 5" with switching elements to trigger the alarm and for releasing the power supply. *See id*. Col. 6, lns. 14-19. Independent Claim 7 describes a "method for operating a security system . . . as claimed in claim 1" using PLCs to transmit the alarm signal, mobile telephone and recording device. *See id*. Col. 6, lns. 21-44. Dependent Claim 8 describes "[a] method as claimed in claim 7," "operably connecting the security system to a vehicle having an ignition power supply and a fuel pump solenoid." *Id.* Col. 6, lns. 45-51. Dependent Claim 9 describes "[a] method as claimed in claim 7," "repeating the alarm signal . . . in case . . . the mobile telephone is busy." *Id*. Col. 6, lns. 52-58. Dependent Claim 10 describes "[a] method as claimed in claim 7" connecting the security system to the vehicle's power supply to operate it. *Id*. Col. 6, lns. 59-65. All the later claims are dependent upon the construction of Claim 1 and are more limited in scope than Claim 1.

The express language of the '654 patent specification discloses that Mr. Gharb patented a *security system* that utilizes multiple PLCs and high-speed GSM to sense intrusions, sends text messages to a cellular telephone, repeats those messages as necessary if the phone is busy, and interrupts the vehicle ignition power supply and blocks the fuel pump solenoid. *See* Pls.' Mem., Exh. 1. The prosecution history gives further evidence that the claimed invention is a security system having five PLCs that are connected to the other elements in the security system in the particular manner claimed and having the specific functions recited in the claims.

-12-

During the prosecution of U.S. Patent Application No. 09/762,111, which eventually issued as the '654 Patent, the Patent Examiner rejected the claims as obvious under 35 U.S.C. § 103(a), in view of U.S. Patent No. 5,497,149 entitled "Global Security System," that had been previously issued on March 5, 1996, to Ray Fast ("the '149 Patent"). *See* Defs.' Mem., Exs. 11 (Office Action dated Feb. 13, 2002) & Ex. 12 (the '149 Patent). In reaching this conclusion, the Examiner explained:

> It would have been obvious to one having ordinary skill in the art to employ the claimed well-known controller/microprocessor in the Global Security System with the mobile telephone of [Mr.] Fast[4] for monitoring objects, in particular vehicle and/or any object security protection.

Pls.' Mem., Ex. 11 at 16. In response to the rejection of his claims, Mr. Gharb, through counsel, submitted arguments to distinguish his invention from that covered by Mr. Fast's '149 Patent:

> [Mr.] Fast fails to disclose or suggest a security system as recited in Claim 1, wherein (a) the second PLC controller repeats the alarm signal if the line dialed by the mobile telephone in case of an alarm, is busy, and (b) each time the second PLC controller repeats the alarm signal, the third, fourth and fifth PLC controllers activate the mobile telephone and the digital recording device.

Pls.' Mem., Ex. 13 at 7. Upon review, the Patent Examiner issued a Notice of Allowability and stated the allowable subject matter, *i.e.*, that part of the patent application that was subject to patent:

> There is no prior art that shows the claimed a [sic] security system for monitoring objects such as an automobile includes a Global Positioning System, a digital recording device, a computer and five programmable logic controller [sic] for monitoring unauthorized persons attempt [sic] to enter the vehicle. The security system in which an alarm is reported via

---

[4] The Court inserts "Mr." before Ray Fast's name to clarify in each instance that the reference is to a person and not a speed.

> a mobile telephone connection, a second programmable logic controller repeats the alarm signal if the line dialed by the mobile telephone in case of an alarm is busy and each time the second programmable logic controller repeats the alarm signal, the third, fourth and fifth programmable logic controllers activate the mobile telephone and the digital recording device for security protection.

Pls.' Mem., Ex. 14 at 2.

In contesting the Patent Examiner's conclusion that obviousness barred his patent application, Mr. Gharb argued that Mr. "Fast fails to disclose or suggest *a security system as recited in Claim 1*." Pls.' Mem., Ex. 13, at 7 (emphasis supplied). The "prosecution history gives insight into what the applicant originally claimed as the invention, and often what the applicant gave up in order to meet the Examiner's objections." *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 978 (Fed. Cir. 1999). Having so argued, Mr. Gharb limited his patent to a security system with the attributes described.

### B. Infringement

Infringement under 35 U.S.C. § 271 may be direct, induced, or contributory. An infringement occurs only when every element of the claims are present in the accused device, literally or by an equivalent. *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 40 (1997) ("Does the accused product or process contain elements identical or equivalent to each claimed element of the patented invention?"). The patent holder bears the burden of proving an infringement. Therefore, Mr. Gharb must be able to show that Unitronics makes, uses, sells, offers to sell, or imports security systems that have all of the elements of Claim 1 of the '654 Patent. Mr. Gharb cannot show contributory or induced infringement under 35 U.S.C. §§ 272(b) or (c) without evidence of direct infringement by Unitronics or its customers. *Metro-Goldwyn-Mayer Studios, Inc.*

-14-

*v. Grockster, Ltd.*, 545 U.S. 913, 940 (2005) ("In addition to intent to bring about infringement and distribution of a device suitable for infringing use, the inducement theory of course requires evidence of actual infringement by recipients of the device."); *R.F. Delaware v. Pac. Keystone Technologies*, 326 F.3d 1255, 1268 (Fed. Cir. 2003) ("liability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement by customers"); *Joy Techs. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993) ("either form of 'dependent infringement' cannot occur without an act of direct infringement").

### 1. Unitronics Does Not Directly Infringe

Unitronics PLCs are capable of communicating with cellular telephones and modems using the GSM standard, among others. Mr. Gharb's infringement contentions arise from his belief that simply having a PLC that is able to communicate over a GSM network would infringe his patent. His position represents a misunderstanding of U.S. patent law. The law states that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefore, infringes the patent." 35 U.S.C. § 271(a). But, to infringe, the accused device must have all of the elements set forth in the claims. *Warner-Jenkinson*, 520 U.S. at 40; *Cross Med. Prod. v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1311-12 (Fed. Cir. 2005). Unitronics' PLCs do not have all of the elements set forth in the '654 Patent. Most critically, Unitronics PLCs are not security systems, do not contain digital recording devices with emergency messages, are not relays, are not computers for programming PLCs, and are not used by Unitronics to transmit a data set including alarm information in a security system.

Mr. Gharb argues that Unitronics "can not use or make any element of my USA

-15-

Patent." Pls.' Mem., Ex. 7; Def.'s Responses to Pls.' Interrogatories at No.7 [Dkt. #31].   This

represents an inaccurate understanding of U.S. patent law.  Mr. Gharb did not receive a patent for

each and every separate claim individually; rather, he received a patent for an invention that entailed

*all* claims.   A person buying PLCs from Unitronics might, in turn, use them to configure a security

system that mimics the one invented by Mr. Gharb.  However, a device does not infringe simply

because it is possible to alter it in a way that would then satisfy all the elements of a patent claim.

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1555 (Fed. Cir.

1995).   The patent holder must establish that an accused product meets each and every claim

element.  *Warner-Jenkinson*, 520 U.S. at 40.  Mr. Gharb is unable to point to any product made,

used, offered for sale, sold, or imported by Unitronics that includes each and every element of Claim

1 of the '654 Patent.  No reasonable juror could conclude that Unitronics does or has infringed on

Mr. Gharb's patent.  Unitronics produces PLCs; it does not produce security devices.  It is really as

simple as that.

### 2.  Unitronics Does Not Induce Infringement

Whoever actively induces infringement of a patent shall be liable as an infringer.  35

U.S.C. § 271(b).  Mr. Gharb has not alleged that Unitronics' products induce infringement of his

patent.  His contention is that the Unitronics PLCs that can be connected to a modem that utilizes

GSM and that can thereby reach a cellular telephone directly infringe on the '654 Patent.  Unitronics

seeks a declaratory judgment nonetheless that it does not induce infringement.

To prevail on inducement of infringement under 35 U.S.C. § 271(b), a "patentee is

required to show that there has been a direct infringement by the accused infringer's customers, that

the accused infringer knowingly induced infringement, and possessed specific intent to encourage

another's infringement." *Cross Med. Prod. v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1312 (Fed.

Cir. 2005). The record admits no such evidence. None of the uses of Unitronics' PLCs presented

by Mr. Gharb show use of them in any security system. *See* Pls.' Mem., Ex. 17; *see also* Gharb

pleadings [Dkt. ##28, 31, 32].[5] No reasonable juror could conclude that Unitronics has induced

others to infringe the '654 Patent, much less that Unitronics had the specific intent to do so.

### 3. Unitronics Does Not Contributorily Infringe

With respect to contributory infringement, the Patent Statute states:

> Whoever offers to sell or sells within the United States or
> imports into the United States a component of a patented
> machine, manufacture, combination of composition, or a
> material or apparatus for use in practicing a patented process,
> constituting a material part of the invention, knowing the same
> to be especially made or especially adapted for use in an
> infringement of such patent, *and not a staple article or
> commodity of commerce suitable for substantial noninfringing
> use*, shall be liable as a contributory infringer.

35 U.S.C. § 271(c) (emphasis added). Unbeknownst to him, Mr. Gharb may rely on this provision

of the law, since his best argument is that PLCs can be used as one component in the security system

defined by Claim 1 of the '654 patent. To make such a case, he would have to prove: (i) an act of

direct customer infringement; (ii) Unitronics' knowledge that its PLCs were especially made for use

in an infringing security system; and (iii) Unitronics' PLCs are not staple items of commerce having

no substantial non-infringing uses. *Cross Med. Prod.*, 424 F.3d at 1312; s*ee also Aro Mfg. Co. v.

Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964). As indicated earlier, there is no

---

[5] Because Mr. Gharb is proceeding *pro se* and resides in Switzerland, the Court allowed him to submit filings by email to the Court's deputy clerk, who then entered them on the docket so that they were available to Unitronics through the electronic case filing system.

evidence on the first two points, but the third really squelches the argument.

Mr. Gharb's own description of PLCs, *supra* n. 3, proves that they are staple articles of commerce that are used for substantial noninfringing uses. In fact, there is no evidence that Unitronics PLCs are used anywhere by anyone in a security system of any type. Rather, they are general purpose devices for industrial automation that are used for many alternative purposes. As the Supreme Court noted in rejecting a contributory infringement claim that was based on the sale of components of a patented system:

> The limited monopoly to make, use and vend an article may not be expanded by limitations as to materials and supplies necessary to the operation of it. . . . If a monopoly could be so expanded, the owner of a patent for a product might conceivably monopolize the commerce in a large part of unpatented materials used in its manufacture. . . . [The] courts deny relief against those who disregard the limitations sought to be imposed by the patentee beyond the legitimate scope of its monopoly.

*Carbice Corp. of Am. v. Am. Patents Dev. Corp.*, 283 U.S. 27, 31-32 (1931). Mr. Gharb can no more patent GSM or cellular telephones than he can claim a patent on PLCs, even though each is a critical component of his invented security system. Rather, each is a staple item of commerce having substantial non-infringing uses. No reasonable juror could find otherwise.

Unitronics PLCs can be connected to a modem that utilizes GSM, but there would be no contributory infringement even if such a combination were to be used by Unitronics customers in a security system with the attributes defined in the '654 Patent. "[A] sale of an article which though adapted to an infringing use is also adapted to other and lawful uses, is not enough to make the seller a contributory infringer." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984).

Were the record not so clear, and admitted by Mr. Gharb in his own statements, the

Court would find the matter admitted pursuant to Federal Rule of Civil Procedure 36. Unitronics submitted a Request for Admissions that Mr. Gharb admit that "Unitronics' PLCs are staple items of commerce with substantial noninfringing uses." *See* Pls.' Mem., Ex. 8, No. 1. Mr. Gharb never responded despite multiple efforts by Unitronics to obtain his responses and the specific direction of the Court that he answer. Facts are conclusively established when there is a failure to respond to requests for admission. *See Anchorage-Hynning & Co. v. Moringiello*, 696 F.2d 356, 359-60 (D.C. Cir. 1983).

### 4. Attorney Fees

Unitronics asked the Court to award it its attorneys' fees because this is an "exceptional case" in which Mr. Gharb's "contention that Unitronics' PLCs infringe simply because they are capable of communicating with a GSM device is frivolous and a manifestly unreasonable assessment of infringement" of his '654 Patent. Pls.' Mem. at 19; *see* 35 U.S.C. § 285 (allowing an award of attorneys' fees to the prevailing party "in exceptional circumstances"). Firm in his belief that Unitronics has infringed his patent, Mr. Gharb has not responded to the request for attorneys' fees.

Although the Court agrees that Mr. Gharb has terribly misconstrued his patent and that none of his assertions of infringement has merit, the Court will decline to award attorneys' fees. Mr. Gharb is proceeding *pro se* in a foreign language and in a foreign court. He has informed the Court that he is without assets to retain counsel. Although his actions prompted Unitronics to sue for a declaratory judgment that it has not infringed the '654 Patent, he did not haul Unitronics into court.

-19-

**IV. CONCLUSION**

Finding that Unitronics has not infringed on the '654 Patent, the Court will grant

summary judgment in its favor.  A memorializing order accompanies this Memorandum Opinion.


_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

DATE: September 25, 2007